UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────────┐
  JEFFREY CHARLES TEW,

                              Plaintiff,

         v.

  TOWN OF STONY POINT and
  STONY POINT JUSTICE COURT,

                              Defendants.
└─────────────────────────────────────────────┘
```

No. 22-CV-6148 (KMK)

OPINION & ORDER

Jeffrey C. Tew
Stony Point, NY
*Pro se Plaintiff*

Kenneth E. Pitcoff, Esq.
John Paul J. Collorafi, Esq.
Morris Duffy Alonso Faley & Pitcoff LLP
New York, NY & Floral Park, NY
*Counsel for Defendant Town of Stony Point*

Maritanna Isakov, Esq.
The Isakov Law Firm, P.C.
New York, NY
*Counsel for Defendant Town of Stony Point*

KENNETH M. KARAS, United States District Judge:

Plaintiff Jeffrey Charles Tew ("Plaintiff"), proceeding pro se, brings this action against

Town of Stony Point (the "Town") and Stony Point Justice Court ("SPJC"; collectively,

"Defendants"), alleging that Defendants denied Plaintiff with access to the courts, falsely

imprisoned Plaintiff by "restraint of liberty of travel," violated the Americans With Disabilities

Act (the "ADA"), 42 U.S.C. §§ 12132, et seq., and alleging violations of the Racketeer Influence

and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.  (*See* Compl. (Dkt. No. 1-1).)

Before the Court is Defendant's Motion To Dismiss the Complaint (the "Motion").  (*See* Not. of Mot. (Dkt. No. 12).)  For the foregoing reasons, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from the Complaint and are assumed to be true for the purposes of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

Plaintiff alleges that on March 29, 2021, "Judge Philips" prevented Plaintiff for accessing the SPJC.  (*See* Compl. 2.)  Specifically, Plaintiff alleges that he is a "law educate and has power of attorney" over "Robert Sullivan" and appeared at Court for a proceeding.  (*Id*.)  Plaintiff alleges that Judge Philips asked Plaintiff to return an hour after the scheduled proceeding.  (*Id*.) When "Plaintiff and counsel for Robert Sullivan returned[,] [three] police cars blocked the vehicle," and the police officers told Plaintiff that he cannot enter court.  (*Id*.)

In addition, Plaintiff appears to allege that Judge Philips asked Plaintiff to wear a mask during the COVID-19 pandemic, though Plaintiff alleges that "Judge Philips . . . did not wear a mask[.]"  (*Id*. at 3.)  In addition, Plaintiff alleges that Judge Philips relies upon "an unlawful commercial monopoly, the private, non-governmental club, the bar association" to deny individuals the right to counsel.  (*Id*.)

### B.  Procedural History

Plaintiff initiated this Action by filing a summons and verified complaint in New York Supreme Court of the County of Rockland ("Rockland County Court") on June 28, 2022.  (*See* Not. of Removal (Dkt. No. 1).)  On July 19, 2022, the Town removed this case to this Court on the basis of federal question jurisdiction.  (*See* Not. of Removal.)

2

On September 16, 2022, the Town filed a pre-motion letter in anticipation of filing a motion to dismiss the Complaint.  (*See* Dkt. No. 7.)  On October 13, 2022, Plaintiff requested an extension due to ongoing health issues, which the Court granted.  (*See* Dkt. No. 9.)  On November 17, 2022, Plaintiff requested another extension due to his ongoing health issues.  (*See* Dkt. No. 10.)  In lieu of a pre-motion conference, the Court set a briefing schedule on the pending Motion.  (*See* Dkt. No. 11.)

Pursuant to the briefing schedule, the Town filed the instant Motion on December 15, 2022.  (*See* Not. of Mot.; Mem. of Law in Supp. of Mot. To Dismiss ("Def's Mem.") (Dkt. No. 13); Decl. of Kenneth E. Pitcoff in Supp. of Mot. (Dkt. No. 14).)  Plaintiff did not file his Opposition pursuant to the briefing schedule, nor did Plaintiff request an extension or otherwise communicate with the Court.  (*See generally* Dkt.)  On March 31, 2022, the Court issued an Order directing Plaintiff to respond to the pending Motion by no later than April 30, 2023, or the Court would deem the Motion fully submitted.  (*See* Order (Dkt. No. 16).)  Plaintiff did not respond or otherwise communicate with the Court prior to the deadline.  (*See generally* Dkt.)

## II.  Discussion

### A.  Removal Jurisdiction

On July 6, 2023, the Court received a letter from Plaintiff dated June 26, 2023, stating that he is "not entering into joinder nor ceding jurisdiction as [D]efendant has not answered the matter timely in Rockland County Supreme Court nor transferred the matter to federal court." (Letter from Jeffrey Charles Tew to Court (June 26, 2023) ("Pl's Ltr") at 1 (Dkt. No. 17).) Plaintiff stated that "a letter was mailed to [Plaintiff's] home address dated Sept. 16, 2022 [which was] well beyond the time of response," and that a clerk in the federal courthouse "informed [Plaintiff] that there was a deficien[c]y of a signature as well as no proper response."  (*Id.*)

Plaintiff stated that he was not at the address listed on the docket and had not been there since November 2022.  (*Id*. at 1–2.)  Finally, Plaintiff indicated that "a default notice has been filed in Rockland Court [sic] Supreme Court detailing that no proper response has been done nor was a transfer made within 30 days," and asserted that the Court lacks jurisdiction over this matter. (*Id*. at 2.)

On July 7, 2023, the Court directed Defendant to respond to Plaintiff's letter, as well as instructed Plaintiff to update his address on the docket.  (*See* Dkt. No. 18.)  On July 10, 2023, Defendants responded to Plaintiff's letter, attaching a copy of a letter sent to Plaintiff on February 23, 2023 in which Defendants sent copies of the initial notice of removal dated July 21. 2022, as well as the corrected notice of removal dated September 15, 2022.  (Letter from Defs to Court (July 10, 2023) ("Defs' Ltr 1")  at 1 (Dkt. No. 19).)  The letter also "confirm[s] that [Plaintiff] declined [Defendants'] offer to request that the Court extend [Plaintiff's] time to serve opposition papers" to the pending Motion.  (*Id*.)  On the same day, the Court directed Defendants to file another letter addressing the following (1) Plaintiff's representation "that he never received notice of this Action's removal at the time of filing"; and (2) "whether or not [Defendant] has stayed or otherwise provided notice to state court regarding the removal of this action."  (Dkt. No. 20.)

On July 14, 2023, Defendants filed a supplemental letter addressing the points requested by the Court.  (*See* Letter from Defs to Court (July 14, 2023) ("Defs' Ltr 2") (Dkt. No. 21).) Defendants provided (1) an affidavit of service to Plaintiff of the petition of removal, dated July 21, 2022; (2) an affidavit of service to Plaintiff of the civil cover sheet, petition for removal, and Defendant's pre-motion letter related to the instant Motion, dated September 16, 2022.  (*Id*. at 1.) Defendants also stated that they are not aware of any default issued by any court in the state

action as asserted by Plaintiff's letter, and that "due to an administrative law office error, the

Notice of Removal was not filed with State Court" which Defendants rectified.  (*Id.* at 2.)

The Court construes Plaintiff's letter as a Motion to Remand the instant Action to

Rockland County Court.  (*See* Pl's Ltr.)  Given the representations made by both Parties, the

Court finds that it should retain jurisdiction over this Action.  Section 1447 of Title 28 of the

U.S. Code states, in relevant part:

> A motion to remand the case on the basis of any defect other than lack of subject
> matter jurisdiction must be made within 30 days after the filing of the notice of
> removal under section 1446(a).  If at any time before final judgment it appears that
> the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).  Construing Plaintiff's claims liberally, it appears that Plaintiff is not

alleging that this Court lacks subject matter jurisdiction.  (*See generally* Pl's Ltr.)  Indeed, this

Court firmly retains subject matter jurisdiction over the claims at issue here, arising principally

from federal question jurisdiction under 28 U.S.C. § 1331, because Plaintiff asserts claims under

42 U.S.C. § 1983 alleging that Defendants have violated his federal constitutional rights.  *See* 28

U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising

under the Constitution, laws, or treaties of the United States."); *Tantaros v. Fox News Network,*

*LLC*, 12 F.4th 135, 140 (2d Cir. 2021) ("[F]ederal question jurisdiction is typically invoked by a

plaintiff pleading a federal cause of action . . . .").[1]  As such, the Court construes Plaintiff's

objections as ones related to the removal procedure.

---

[1] This Court also has statutory jurisdiction from Plaintiff's claims under the RICO statute.
*See* 18 U.S.C. § 1964 ("The district courts of the United States shall have jurisdiction to prevent
and restrain violations of section 1962 of this chapter . . . ."), *id.* § 1965(a) ("Any civil action or
proceeding under this chapter against any person may be instituted in the district court of the
United States for any district in which such person resides, is found, has an agent, or transacts his
affairs.").

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  The Second Circuit has clearly explained that federal courts should construe this statute narrowly, resolving any doubts against removability, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments."  *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (quotation marks and citation omitted).  Such strict construction of the removal statute also aids in avoiding "litigation about matters peripheral to the merits of lawsuits."  *Payne v. Overhead Door Corp.*, 172 F. Supp. 2d 475, 477 (S.D.N.Y. 2001) (quoting *Berrios v. Our Lady of Mercy Med. Ctr.*, No. 99-CV-21, 1999 WL 92269, at *3 (S.D.N.Y. Feb. 19, 1999)).

The party seeking removal bears the burden of proving that the jurisdictional and procedural requirements of removal have been met.  *See Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F. Supp. 2d 432, 436 (S.D.N.Y. 2006) (citing *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000)).  Such an approach is "warranted because removal abridges the deference courts generally give to a plaintiff's choice of forum."  *Groman v. Cola*, No. 07-CV-2635, 2007 WL 3340922, at *3 (S.D.N.Y. Nov. 7, 2007) (quotation marks omitted).  A defendant must file a notice of removal within thirty days "after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading . . . or within [thirty] days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."  28 U.S.C. § 1446(b)(1).  In addition, "[p]romptly after the filing of such notice of removal of a civil action[,] the

defendant . . . shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal[.]" *Id*. § 1446(d).  If any defect in the removal procedure occurs, courts are authorized to remand a case to the state court in which the action originated.  *See* 28 U.S.C. § 1447(c); *LaFarge Coppee v. Venezolana De Cementos, S.A.C.A.*, 31 F.3d 70, 72 (2d Cir. 1994).  However, a Plaintiff must make any challenge to removal "on the basis of any defect other than lack of subject matter jurisdiction . . . within 30 days after the filing of the notice of removal under section 1446(a)."  28 U.S.C. § 1447(c).

Here, it is clear that Plaintiff's challenge to the removal procedure is untimely. Regardless of Defendants' conduct in removal of this case, including removing this twice in two months and failing to file the removal notice in state court, Plaintiff has had ample opportunity to challenge the removal of this case that commenced in federal court over a year ago.  Indeed, as Defendants aptly point out, (*see* Defs' Ltr. 2 at 1–2), Plaintiff has been actively participating in this Action since its removal, notwithstanding his six-month lapse in correspondence with this Court after he failed to update his address on the docket.  After removal, Plaintiff sent two letters to this Court requesting extensions to respond to Defendants' pre-motion letter in anticipation of the instant Motion to Dismiss.  (*See* Dkt. Nos. 9–10.)  In the first letter, Plaintiff stated that he was in receipt of the filings by Defendants' counsel but requested an extension of time to respond for health reasons.  (*See* Dkt. No. 9.)  In the second letter, Plaintiff requested another extension for health reasons.  (*See* Dkt. No. 10.)  After this point, the Court did not receive any correspondence *whatsoever* from Plaintiff until the instant challenge to this Court's jurisdiction. (*See generally* Dkt.)  In addition, as represented by Defendants, it appears that Plaintiff was in contact with Defendants in February 23, 2023, discussed the pending motion, and likely

discussed Plaintiff's concerns regarding removal as Defendants sent yet another copy of the requisite removal documents.  (*See* Defs' Ltr. 1, at 1–2.)  And yet, until June 2023, Plaintiff did not raise any of these apparent concerns with the Court.  (*See generally* Pl's Ltr.)

While pro se litigants enjoy the Court's "special solicitude" while "complying with procedural requirements," *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), this does not excuse Plaintiff's need to abide by the procedural rules that govern this Court.  Moreover, any harm that may come from Defendants' procedural mistakes are indeed harmless error, given the numerous federal questions raised in Plaintiff's complaint and the extensive amount of time that has passed since removal.  Plaintiff has readily participated in this case since its removal in July 2022, Defendants have dutifully filed the pending Motion, and it is Plaintiff who failed to oppose or otherwise respond to the pending Motion.

Accordingly, the Court denies Plaintiff's Motion for Remand and retains jurisdiction over this case.

### B.  Standard of Review

The Town moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* Not. of Mot.)  The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a Rule 12(b)(6) motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual

enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79. ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegation contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw all reasonable inferences in the plaintiff's favor," *Div. 1181*, 9 F.4th at 95 (citation omitted).  Additionally, "when ruling on a Rule 12(b)(6) motion to dismiss," district courts are directed to confine their consideration to "the complaint in its entirety, . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021) (quotation marks omitted); *see also Dashnau v. Unilever Mfg. (US), Inc.*, 529 F. Supp. 3d 235, 240 (S.D.N.Y. 2021) (same).

9

Where, as here, a plaintiff proceeds pro se, the court must "construe[ ] [his] [complaint] liberally and interpret[ ] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quotation marks omitted).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them.") (italics and quotation marks omitted).

### C.  Analysis

The Town argues that (1) Plaintiff fails to state a plausible claim for denial of access to the courts because Plaintiff "has not pled the existence of any legal claim which Plaintiff was hindered from pursuing by the Town," (*see* Def's Mem. 5–6); (2) Plaintiff has failed to state plausible claims under the ADA or RICO, (*see id*. 7–9); and (3) Plaintiff has failed to adequately allege claims for false imprisonment, restraint of liberty, or restraint of travel, (*see id*. 9–11). The Court addresses each argument in turn.

### 1.  Denial of Access to the Courts

"To establish a constitutional violation based on denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (quotation marks omitted); *see also Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997) ("In order to establish a violation of a right of access to courts, a plaintiff must demonstrate that a defendant caused actual injury, i.e., took or was responsible for actions that hindered a plaintiff's efforts to pursue a legal claim." (alterations, italics, citations, and

quotation marks omitted)).  For example, a plaintiff could show that he "has been unable to file a complaint or has had a complaint dismissed for failure to observe a technicality" as a result of the actions of the defendant.  *Benjamin v. Fraser*, 264 F.3d 175, 184 (2d Cir. 2001); *see also Little v. Mun. Corp., City of New York*, No. 12-CV-5851, 2017 WL 1184326, at *9 (S.D.N.Y. Mar. 29, 2017).

Here, Plaintiff has failed to sufficiently allege a claim for denial of access to the courts. While Plaintiff alleges that he was physically denied access to the courts, (*see* Compl. 2), Plaintiff has not identified any deliberate or malicious actions by Defendants.  While this Court is indeed construing Plaintiff's complaint "liberally" and is interpreting it "to raise the strongest arguments" possible, *Sykes*, 723 F.3d at 403, Plaintiff's allegations are too sparse for a plausible inference as to why Plaintiff believes he was denied access to the courts.  For example, Plaintiff's allegations could be read several ways: Plaintiff was denied access (1) because of vehicles blocking his car, (*see* Compl. 2); (2) because Plaintiff was acting as an attorney for Robert Sullivan when he was not a barred attorney, (*id*.); and (3) because Plaintiff failed to wear a mask during the COVID-19 pandemic, (*id*. at 3).  Importantly, even under any of these theories, Plaintiff has not pled that there was any malice on the part of Defendants.  (*See generally id*.)  Thus, Plaintiff's claim must be dismissed.  *See Amaker v. Lee*, No. 13-CV-5292, 2019 WL 1978612, at *13 (S.D.N.Y. May 3, 2019) (dismissing access to courts claim in part because plaintiff failed "to identify deliberate and malicious conduct" by defendants); *Richardson v. Dep't of Corr. of N.Y.S.*, No. 10-CV-6137, 2011 WL 4091491, at *6 (S.D.N.Y. Sept. 13, 2011) (dismissing access to courts claim where plaintiff "failed to sufficiently plead that there was any malice" in defendants' actions).

Moreover, Plaintiff has not plausibly alleged that he suffered an actual injury to his own ability to access the courts, raising questions as to whether Plaintiff has standing to bring a claim of denial of access to the courts.  Plaintiff appears to allege that Judge Philips "denied Mr. Sullivan [legal] counsel" in the SPJC when Plaintiff was not allowed to reenter the Court. (Compl. 2.)  However, by Plaintiff's own words, Plaintiff is a "law educate and has power of attorney for Mr. Sullivan," but may not be an attorney himself.  (*Id.*)  This is further bolstered by Plaintiff's "RICO allegations" where he argues that Judge Philips "use[s] . . . an unlawful commercial monopoly, the private, non-governmental club, the bar association" to deny Mr. Sullivan legal counsel.  (*Id.* at 3.)

"To demonstrate standing, a plaintiff must have 'alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" *Salazar v. Buono*, 559 U.S. 700, 711 (2010) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)) (emphasis omitted). The "constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical[.]'" *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).  "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by favorable decision.'" *Id.* (quoting *Simon*, 426 U.S. at 38).

"In addition to these 'constitutional limitations' on federal court jurisdiction, the standing inquiry also 'involves . . . prudential limitations[.]'" *Zutel v. Wells Fargo Bank, N.A.*, No. 12-CV-3656, 2014 WL 4700022, *4 (E.D.N.Y. Sept. 22, 2014) (quoting *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 84 (2d Cir. 2014)).  The Supreme Court has held that a "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 474 (1982).  Additionally, the Supreme Court "has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,'" and requires that "the plaintiff's complaint fall within 'the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Id.* (quoting *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970)).

"It is the burden of the party invoking federal jurisdiction to establish standing." *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 589 (S.D.N.Y. 2013); *see also Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir. 1994) ("[I]t is the burden of the party who seeks an exercise of jurisdiction in his favor . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." (citation and quotation marks omitted)).  Here, Plaintiff upon his own allegations indicates that he is not the individual who has been harmed by access to the courts, it is his supposed client, Robert Sullivan.  "The grant of a power of attorney . . . is not the equivalent of an assignment of ownership; and, standing alone, a power of attorney does not enable the grantee to bring suit in his own name." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18, (2d Cir. 1997); *see also W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008) ("[Supreme Court precedent] . . . implicitly supports the holding of *Advanced*

*Magnetics* that a mere power-of-attorney—i.e., an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor, does not confer standing to sue in the holder's own right because a power-of-attorney does not confer an ownership interest in the claim.  By contrast, an assignment of claims confers legal title or ownership of those claims and thus fulfills the constitutional requirement of an 'injury-in-fact.'" (citations omitted)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 420 (2d Cir. 2015) (noting "the continuing relevance of *Advanced Magnetics*" and concluding that "[i]t is still true that 'the minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim.'" (quoting *W.R. Huff Asset Mgmt. Co.*, 549 F.3d at 108)).

Thus, Plaintiff has failed to allege actual injury attributable to *his* access to the courts or ability to prosecute *his own case*, and he lacks standing to assert a denial of access claim.  *See Lewis v. Westchester Cty.*, No. 18-CV-04086, 2020 WL 5535374, at *7 (S.D.N.Y. Sept. 14, 2020) (dismissing denial of access to the courts claim where plaintiff's allegations were "sparse, conclusory and fail[ed] to allege any injury"); *Odom v. Poirier*, No. 99-CV-4933, 2004 WL 2884409, at *9 (S.D.N.Y. Dec. 10, 2004) (dismissing denial of access claim where the plaintiff failed to "sufficiently allege how [the defendants'] conduct materially prejudiced any existing legal action."); *Gill v. Pact Org.*, No. 95-CV-4510, 1997 WL 539948, at *5 (S.D.N.Y. Aug. 28, 1997) (dismissing denial of access claim where the plaintiff "[did] not show[ ] that he sustained a dismissal of, or suffered any prejudice to, a lawsuit").[2]

---

[2] The Court also advises Plaintiff that "New York makes it civilly and criminally punishable for someone who is not admitted to a State Bar Association to engage in the 'unlawful practice of law.'"  *Upsolve, Inc. v. James*, 604 F. Supp. 3d 97, 105 (S.D.N.Y. 2022) (citing N.Y. Jud. Law §§ 476-a, 478, 484, 485).  A court may also hold a non-lawyer who practices law in civil or criminal contempt.  *See* N.Y. Jud. Law §§ 750, 753.  The Attorney General is authorized to sue "any person, partnership, corporation, or association" who engages in the unauthorized practice of law.  *Id*. § 476-a.  While defining the "practice of law," can be an

2.  Plaintiff's RICO Allegation

Under the RICO statute, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]"  18 U.S.C. § 1962(c).  "To establish a civil RICO claim, a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation."  *Curtis v. Greenberg*, No. 20-CV-824, 2021 WL 4340788, at *7 (E.D.N.Y. Sept. 23, 2021) (quoting *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013)); *see also Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (same).  More specifically, a plaintiff must allege "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citation omitted).

Here, Plaintiff has failed to sufficiently allege any of the constituent elements of a RICO claim.  At best, Plaintiff has alleged a single "act": requiring Plaintiff to wear a mask to enter the SPJC.  (*See* Compl. 3.)  However, Plaintiff has not identified any predicate acts eligible for a

---

elusive endeavor, New York courts have held that one clear category "involves the rendering of legal advice and opinions directed to particular clients."  *Matter of Rowe*, 604 N.E.2d 728, 731 (N.Y. 1992).  Others include "appearing in court and holding oneself out to be a lawyer." *El Gemayel v. Seaman*, 533 N.E.2d 245, 248 (N.Y. 1988).  "By contrast, giving generalized advice to the public—where judgment is not exercised on behalf of a particular client—is not considered the practice of law."  *Upsolve, Inc.*, 604 F. Supp. 3d at 105.

RICO claim, as defined by 18 U.S.C. § 1981(1), nor has Plaintiff pled any of the other requisite elements.  Accordingly, Plaintiff's RICO claim must be dismissed.[3]

### 3.  Plaintiff's ADA Allegation

Title III of the ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation[.]"  42 U.S.C. § 12182(a).  To establish a violation under the ADA, a plaintiff must demonstrate that "(1) [he] [is] a qualified individual[ ] with a disability; (2) that the defendants are subject to the ADA; and (3) that [the] plaintiff[ ] [was] denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or [was] otherwise discriminated against by defendants, by reason of [her] disabilities."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003) (quotation marks omitted).

To allege facts sufficient to state a claim under the ADA, a plaintiff must plead that he has a disability within the meaning of the statute.  *See Lyons v. Legal Aid Soc.*, 68 F.3d 1512, 1515 (2d Cir.1995); *Schwartz v. Comex*, No. 96-CV-3386, 1997 WL 187353, *3 (S.D.N.Y. Apr. 15, 1997).  The plaintiff bears the initial burden of establishing a prima facie case of

---

[3] The Court also notes that numerous courts have also concluded that masking policies further compelling governmental interests and otherwise are permissible in the face of the COVID-19 pandemic.  *See, e.g.*, *Doe v. Franklin Square Union Free Sch. Dist.*, No. 21-CV-5012, 2021 WL 4957893, at *18-19 (E.D.N.Y. Oct. 26, 2021) (upholding school mask mandate as reasonable); *L.T. v. Zucker*, No. 21-CV-1034, 2021 WL 4775215, at *7–9 (N.D.N.Y. Oct. 13, 2021) (holding that mask mandates further compelling governmental interest of preventing the spread of COVID-19); *Young v. James*, No. 20-CV-8252, 2020 WL 6572798, at *3 (S.D.N.Y. Oct. 26, 2020) (rejecting First Amendment challenge to Governor Cuomo's mask mandate because plaintiff did not show a "plain, palpable invasion of rights secured by the fundamental law").

discrimination.  *See Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869–70 (2d Cir. 1998).  In

order to show that he has a disability, Plaintiff must demonstrate that he (1) has a physical or

mental impairment that substantially limits his major life activities; (2) has a record of such an

impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2); *see*

*Schaefer v. State Ins. Fund*, 207 F.3d 139, 141 (2d Cir. 2000).  Because Plaintiff has failed to

allege what disability he suffers from, (*see generally* Compl.), Plaintiff has not sufficiently

alleged a claim under the ADA.  *See Kendricks v. Westhab, Inc.*, 163 F. Supp. 2d 263, 268–69

(S.D.N.Y. 2001).

Even assuming arguendo that Plaintiff indicated what disability he suffered from,

"[P]laintiff specifically alleges that he was denied access to the facility because he refused to

wear a mask."  *Fradys v. Rondeau*, No. 21-CV-7861, 2022 WL 1289674, at *4 (S.D.N.Y. Apr.

29, 2022).  (*See also* Compl. 3 ("The RICO Act to support an unlawful[] monopoly was violated

as well as the [ADA] in that Judge Philips who did not wear a mask demanded Plaintiff wear a

mask in violation of said Act.").)  "[P]laintiff's . . . general allegation that he was denied entry

because of his disabilities . . . is contradictory and entirely conclusory, and the Court is not

required to accept it as true."  *Fradys*, 2022 WL 1289674, at *4 (citations omitted).

Accordingly, Plaintiff's ADA claim is dismissed.

### 4.  False Imprisonment

Finally, Plaintiff has alleged a series of causes of action related to his alleged restraint,

where "three police cars blocked [Plaintiff's] vehicle."  (Compl. 2.)  Plaintiff alleges that Judge

Philip "tried to impose harassment by false imprisonment and restraint of liberty of travel."  (*Id.*)

In an effort to interpret Plaintiff's claims, the Town divides its argument into three distinct

causes of action: false imprisonment, restraint of liberty, and restraint of travel—noting that the

latter two may not be valid causes of action in law.  (Def's Mem. 9–10.)  The Court agrees, at least to the extent that Plaintiff has not specified which analogous cause of action he intends to invoke in the instant action.  As all three "causes of action" appear to stem from Plaintiff's alleged false imprisonment claim—i.e., Plaintiff's inability to otherwise leave his car due to the police cars blocking his egress—the Court construes Plaintiff's complaint as raising a single false imprisonment claim.

"A Section 1983 claim for false arrest [or false imprisonment] rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Cea v. Ulster Cty.*, 309 F. Supp. 2d 321, 329 (N.D.N.Y. 2004) (citations and quotations omitted).  Such claims are one and the same because "[f]alse arrest and false imprisonment overlap; the former is a species of the latter." *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  The elements of a claim for false arrest under § 1983 are the same elements as a claim for false arrest under New York law.  *See Lewis v. City of New York*, 18 F. Supp. 3d 229, 235 (E.D.N.Y. 2014) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  "Under New York law, the elements of a false arrest and false imprisonment claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

Here, Plaintiff's allegations must fail because he has not sufficiently alleged that he was "confined" in violation of his Fourth Amendment rights.  In order to determine whether a particular encounter between police officers and an individual constitutes a "seizure" for the purposes of the Fourth Amendment, a court must decide "whether a reasonable person would

feel free to decline the officers' request or otherwise terminate the encounter." *Salmon v.*

*Blesser*, 802 F.3d 249, 253 (2d Cir. 2015) (quoting *Florida v. Bostick*, 501 U.S. 429, 436

(1991)).  As the Second Circuit has explained:

> Police officers frequently order persons to leave public areas: crime scenes, accident sites, dangerous construction venues, anticipated flood or fire paths, parade routes, areas of public disorder, etc.  A person may feel obliged to obey such an order.  Indeed, police may take a person by the elbow or employ comparable guiding force short of actual restraint to ensure obedience with a departure order.  Our precedent does not view such police conduct, without more, as a seizure under the Fourth Amendment as long as the person is otherwise free to go where he wishes.

*Id*. at 253 (citing *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994)) (stating that *Sheppard*

"concluded that a person who is ordered to leave a judge's chambers and then escorted out of the

courthouse has not been seized because the person remains free to go anywhere else that he

wishes").  Accordingly, the Second Circuit in *Salmon* concluded that "an order to depart a public

place that allows a person to go anywhere else he wishes does not, without more, effect a Fourth

Amendment seizure."  *Id*. at 257.  Here, Plaintiff has not alleged "the use of sufficient force

intentionally to restrain [him] and gain control of his movements" or the use of any force at all.

*Id*. at 255.  Accordingly, as Plaintiff has not alleged any confinement or restraint in violation of

his Fourth Amendment rights, Plaintiff's false imprisonment claim is dismissed.[4]

---

[4] To the extent that Plaintiff is attempting to raise a right to travel claim as the Town has surmised, (*see* Def's Mem. 10–11), this claim too must fail.  "As the Supreme Court has recognized, the right to travel throughout the United States is a basic constitutional right" stemming from, *inter alia*, the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment, the Commerce Clause, and the Fifth Amendment Due Process Clause. *Edelhertz v. City of Middletown*, No. 12-CV-1800, 2013 WL 4038605, at *5 (S.D.N.Y. May 6, 2013).  While the Town argues that this claim must fail because "[t]he constitutional right to travel is . . . inapplicable here as it applies to interstate travel," (*see* Def's Mem. at 10), this is incorrect.  The Second Circuit has held the constitutional right to travel applies not only to *interstate* travel, but also to *intrastate* travel.  *See Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir.1990) ("Though the Supreme Court has dealt only with the right to travel between states, our Court has held that the Constitution also protects the right to travel freely within a single state.");

III. Conclusion

For the foregoing reasons, Defendant's Motion is granted.  Because this is the first adjudication of Plaintiff's claims on the merits, Plaintiff's claims are dismissed without prejudice. If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint.  The amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, the claims dismissed without prejudice may be dismissed with prejudice.

The Clerk of the Court is respectfully requested to terminate the pending motion, (Dkt. No. 12), and mail a copy of this Opinion and Order to Plaintiff at the address listed on the docket.

---

*King v. New Rochelle Mun. Hous. Auth.*, 442 F.2d 646, 648 (2d Cir.1971) ("It would be meaningless to describe the right to travel between states as a fundamental precept of personal liberty and not to acknowledge a correlative constitutional right to travel within a state."). Interpreting Plaintiff's Complaint liberally, Plaintiff is raising a right to *intrastate* travel claim, stemming from the police cars blocking his vehicle. (*See* Compl. 2.)

"Any such right, however, is not unbounded."  *Five Borough Bicycle Club v. City of New York*, 483 F. Supp. 2d 351, 362 (S.D.N.Y. 2007).  Traditionally when discussing the right to travel—whether intrastate or interstate—a court will look at a particular statute or regulation, not a one-off incident as alleged by Plaintiff.  *See id*. ("When a statute or regulation has merely an effect on travel, it does not raise an issue of constitutional dimension.  A statute implicates the constitutional right to travel when it actually deters such travel, or when impedance of travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." (citations, quotation marks, and alterations omitted)); *Attorney Gen. of N.Y. v. Soto–Lopez*, 476 U.S. 898, 903 (1986) ("A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right.").  As Plaintiff has alleged no such law or policy, his right to travel claim must fail.

SO ORDERED.

Dated:    September 20, 2023
          White Plains, New York

_____
KENNETH M. KARAS
United States District Judge